case number 2 1 dash 1 3 1 8 and rate United States of America oral argument not to exceed 15 minutes for plaintiff or I'm sorry 15 minutes for petitioner five minutes for respondent Ashley Townsend 15 minutes for respondent judge David Lawson Andrew gets for the petitioner you may proceed morning morning may please the court Andrew gets for the United States with the court's permission I'd like to reserve three minutes for rebuttal when the parties have negotiated a plea agreement in a criminal case rule 11 permits the district judge to reject some types of plea agreements for some the rule does not permit the district judge to reject a plea agreement based on his categorical distaste for appeal and collateral review waivers nor does it permit the judge to impose those preferences on every plea agreement negotiated in his courtroom in violating the rules boundaries in that way the district judge's actions here amounted to a clear case of judicial overstep and this court should grant mandamus I want to start with the language and structure does it make to your argument that the judge very clearly did lay out his reasons for rejecting the plea agreement which he certainly would have had the discretion to do had you not known of his categorical distaste for the waivers so I think the answer to your question judge Batchelder is twofold is that those reasons were untethered to why he has discretion to reject a charge if we back up and look at rule 11 C's language and structure let's say this agreement had only included recommendations under rule 11 C 1 B the judge would have had no discretion at all to reject the agreement even if he disagreed with any negotiated waivers he only had the authority to reject this agreement because it was a charge bargain it makes no sense to say that a judge can reject a charge bargain for any reason including negotiated waivers but can't reject a B agreement at all even if it includes those negotiated waivers so I think the language and structure here showed that the judge's authority to reject an agreement has to be tethered to why he has discretion to reject a particular agreement and in this case the reason he had discretion to reject the agreement was because it was a charge bargain so mr. gets there are lots of questions about whether the rate is appropriate etc but just on the merits here if we were to buy your argument are we gonna get this court into a situation where the district court needs to articulate the reasons on the record for giving for rejecting a plea and we're gonna ask whether the district judge said enough and then we're gonna have disputes about how much is enough do they have to say on the record it'll be like a sentencing hearing like did they articulate the 3553 factors sufficiently I mean is that how do we not go there or should we I guess should we go there is and if not why not so I think there's a twofold answer your question is one is you've already gone there there are cases in this courts case law saying the judge has to articulate a reason for rejecting a plea agreement that's this court's decision and more so you've already gone there I'm not suggesting the judge needs to give anything like a sentencing explanation what I'm suggesting is the judge's discretion when the judge exercises that discretion has to be confined to whether or not the particular charge bargain is appropriate under rule 11 c1a when that's the type of agreement or whether the sentencing stipulation ties the judge's hands in some way that the judge finds inappropriate if it's a c1c agreement so I'm not suggesting the judge needs any sort of lengthy explanation but if the court's cases already require that explanation and here getting back to your question judge Batchelor we know that the district judge did not reject this agreement based on his dislike of the charge bargain we know that because he said from the outset he was going to reject any agreement that included these waivers he didn't even know at that pretrial hearing that there was going to be a charge bargain at all he said I'm going to reject any agreement that does not comply with this practice so he already said he was going to reject it even before he knew it was a charge bargain this would all this go away if judge Lawson said I'm not going to reject these appeal waivers categorically from here on I mean the this mandamus case you know so often we get these with district court judges often they're about decisions they won't make and the minute the mandamus petitions filed the judge is notified and Eureka they decide the motion and we never have to decide the mandamus case and I just wonder district court judges have a lot of discretion in this area and it seems the potentially egregious thing is having a district court judge just saying always I will not accept this and effectively participating in the negotiation process those seem to be two valid objections but I would suspect judge Lawson would probably agree I'm going to be careful about participating in plea negotiations number one and number two I'm not going to do anything categorically I realize it has to be individualized wouldn't that end this case I mean because you even this case you you're fine with sending it back to him you're not asking for a new judge and you're you you would say let him analyze this in just the case specific way just seems like we ought to be able to do this I think I agree with you maybe 75% of the way judge Sutton and that other 25% is very important we agree I think that this categorical practice is improper what the judge said at the hearing that's participation plea negotiations under any definition of the term even having a broad practice that you announce to the world or even don't announce to the world that's the type of categorical rule that does not fly when it comes to exercising discretion I think the problem is more fundamental than that though because I don't think you can send it back to a judge to just say well in this individualized interest or individualized case I'm rejecting these waivers and that's because of that main point that I began with the language and structure of rule 11 if these waivers appeared in a B plea let's say there was no charge bargain here at all the judge would have no authority to reject the agreement he only has authority because of the charge bargain that shows that his individualized assessment which I think is what your honor is referring to has to be based on his view of the charge bargain do the counts of conviction adequately reflect the defendants conduct and permit the judge to impose an appropriate sentence fine what why isn't that work that's exactly what we're asking for judge Sutton but but what why why is that a 25% difference between our two views why why can't that work in every case is what I'm trying to get at because not every case is a charge bargain case is that the point you're making maybe maybe I should just agree to agree I mean I think well I might just be misunderstanding your honor's concern well I guess I'm just making the point that there's a lot of discretion with district court judges and figuring out whether to approve a charge bargain right correct fair enough and why don't we just you don't you don't think it's possible to for the judge to be convinced he can't do this in a blanket way anymore and he's got to not have his office telling the lawyers don't put this in the plea agreement and if he agrees to end those two practices whether formally or informally we don't need to worry about this but again I agree with everything your honor just said except that last point because I think our arguments a bit more in saying that even if the judge says fine I'm not telling the lawyers about it he still can't reject a plea agreement based on his views about the waivers yes so in other words even if he reject I think your position is a judge can't reject a charge bargain or any bargain based on the inclusion of a plea waiver so that's the rule you want us to announce that's leeway the inclusion of a plea waiver whether individualized or not is an impermissible consideration or impermissible reason for the judge to reject a plea why is that I mean why can't it sometimes be just not fair or appropriate not categorically but in some instances so I think because it's not why the judge has discretion to reject those types of plea agreements that's not where the rule gives him authority to do it I think that's the fundamental point it's also the point the Tenth Circuit made in Vanderwerf and the DC Circuit made in Fokker services that a district judge's authority to accept or reject a charge bargain that was the the plea agreement in Vanderwerf or even a sentencing stipulation it stems from the district judge's authority over sentencing that's the core of the judicial authority here but why maybe this is not separable but let me just see if it can be separated why can't one think of the two issues I've been focused on participating effectively in the negotiation process having a line-item veto we're never doing this and I never have done it those are mandamusable type things the thing you're spending your time talking about which I guess is our 25% just I'm not sure I disagree with you but on that 25% point why isn't that point better addressed in an appeal I realize the appeals aren't going to happen very often I got that point but that seems less appropriate for mandamus than the first two so why do you do well I don't expect you to agree with that but do you understand why I would say that I understand why you would say it and I'd respond with a couple of points one is it is mandamusable and it's very similar to Fokker services in that way we're not saying the judge has no discretion to accept or reject a charge bargain clearly he does what we're saying is the consideration he relied on here whether or not the agreement contained an appeal waiver was so far out of that range that it was an impermissible basis and that the court should grant mandamus to confine the judge within the scope of his proper authority that is a typical use of the mandamus writ and so that's what we're asking the court to do here getting to your question about direct appeal though it's not clear at all the government has a right to direct appeal from final judgment here to vindicate this interest or would have any way to do that and defense says you're saying that because when in this case it goes to trial if you lose you can't appeal if you win it requires the defendant to appeal is that what you're saying yes and the district judge says if the defendant appeals that somehow vindicates our interests I'm not aware of any case saying that because the other party can appeal it vindicates the petitioner's interest well it does just to finish that point sorry to interrupt but just to finish that point it does practically speaking leave the appeal not just in the defendant's hand it's affected the district court judge's hands because if the district court judge doesn't sentence over say 10 years in this case there'd be no injury right there'd be nothing to appeal that's exactly right the district court judge is in charge of whether this approach is  here at the whim of whether the defendant appeals at all and what issues the defendant raises we have to sort of join into the issue and assume they'd raise it and assume it'd be proper for them to raise it mr. Goetz you seem to concede that the defendant would have a right to appeal after a criminal trial if convicted I'm not sure I understand why that's true so that would definitely be you know in Loeffler versus Cooper the Supreme Court said that in an analogous situation if your counsel didn't advise you about something in the plea bargaining process even though you were convicted in an error-free jury trial you could appeal that because you can bring it in or maybe bring it on habeas because it's an ineffective assistance of counsel claim because the counsel right Sixth Amendment right extends back to the plea bargaining process but if a defendant is convicted in an error-free jury trial what's the hook for them to complain about the lack of acceptance of a plea bargain and there's no constitutional right so it is it the rule 11 right survives conviction in an error-free jury trial like I I'm I'm not sure I understand that point oh I see my red light is on man yeah no but I think the answer is yes the defendant could it would be what happened in Vanderwerf where the defendant says I was convicted at trial I would have gotten a better deal had the judge accepted my plea agreement and his rejection was an abuse of discretion that's exactly what happened in but I understand that the Tenth Circuit thought that but the Tenth Circuit also thought that Loeffler had created this huge sea change that extended beyond the Sixth Amendment right to some kind of rule 11 attachment to what the judge does can I yeah they're actually the Tenth Circuit rejected that Loeffler argument the district judge there was the one I'm sorry I was confused about that. So the Tenth Circuit got that one right as well but what just explain to me why it is that the rule 11 right you don't have a constitutional right to a plea bargain why does the rule 11 rules-based right not a constitutional right survive conviction at an error-free jury trial are we constitutionalizing a right to the plea bargain to plea bargain process like I I'm just I don't know where that comes from. Well I think the answer is typically when the defendants convicted a trial if there was some sort of abuse of discretion in accepting or sorry rejecting the agreement the defendants usually can waive that or sorry not waive raise that what I'd say. In the Tenth Circuit case is your only authority for that or is there more like maybe I just need to be educated I which is entirely possible. So there's more in the sense that there are quite a few cases where a judge rejects a plea agreement containing a sentencing stipulation the defendant withdraws his guilty plea goes to trial and the raises on appeal whether it was an abuse of discretion to reject it. So those those cases are in this court's case law. The one thing I would say is this would be a I think a more difficult case and probably more central to the issue the courts addressing if the defendant had petitioned for mandamus. The government's interest here is a little bit different and probably more fundamental and the government's interest here is that core of the at all of what terms go in that agreement. If a judge can use his authority to accept a accept or reject a charge bargain or accept or reject a sentencing stipulation in this way the judge can just say I'm going to reject any agreement that doesn't include my preferred terms or that include or that includes terms I don't like even if I don't say it out loud and that's just that's utterly disconnected to why he has authority to reject those types of I'm not aware of many judges having a blanket policy like this. Is this unusual? Is it something either in your district or elsewhere that you have certain judges just won't accept them? So it's very unusual. I think Judge Lawson is one of the few judges in the country who tries to do this. One of the other judges who tried to do it was the one who got reversed in Vanderwerf. I mean that as the DC Circuit Center FACR services I mean that actually supports mandamus because virtually every other district judge doesn't think they have the authority to dictate the terms of plea agreements in this way. So the fact that Judge Lawson is such an outlier on this policy I think actually supports mandamus here and supports the government's petition. All right well I'm here get your rebuttal. Here I think is Mr. Evelyn next. Good morning. First of all, I want to express my gratitude to the court for allowing me to present my court argument virtually. And I also want to thank the co-counsel for not objecting. You should send your thanks to the IT department. All right, well we're glad to have you. Thank you. In this case, the government proposition for mandamus supports the court orders to follow the spying for free filing. First, it basically contains our response to the government petition. We're essentially asking the court to grant the belief expressed about the government. We share the district court's distress over the government's use of charges that carry mandatory amendment sentences as leverage over defendants in plea bargaining. And we do recognize that it does tilt the process in their favor to grab some therapy. But we think the rejection of the agreement in this case puts Mr. Townsend in a far worse position. If Mr. Townsend is convicted of the charge at trial, he faces a mandatory amendment of 20 years. The mandatory amendment is reduced by half in this plea agreement. And further, the rejection of this plea agreement categorically, due to the appellate waivers, we think qualifies as an arbitrary reason. And it's not judged with specific facts in this case. The district court, in this case, for example, didn't first request a pre-sentence report, which is not required, but is considered to be the preferred practice in case cases like this. The court appears to conclude that any agreement that contains such appellate waivers should be rejected. And we believe the appellate waivers in this case are broad, but they're not unconditional. There have been several clear-cuts, you know, one for ineffective assistance to counsel, one for relief under 35HUC, the first step back, and also one for prosecutorial misconduct. When greater waivers are brought, and perhaps the defendant will receive the less favorable consideration than what Mr. Townsend gets, might there be a rejection back and forth. But here, even the court characterizes this plea bargain, to use the court's words, as too good to refuse, which would suggest that Mr. Townsend is receiving a substantial benefit from this plea agreement. Mr. Townsend is guilty of appellate rights in these waivers, particularly in regards to sentencing, but is reasonable in this case because of the mandatory minimum penalty. If the defendant in this case was to successfully prevail on an objection to the guidelines, the sentence would still have to start from 20 years. So this plea agreement is still a much better situation, and I think it clearly shows that we contemplated the consequences of the waiver in this case. The same is true for possible changes in the law that's discussed by amicus that the defendant is giving up. This reduction from 20 years of mandatory minimum to 10 years gives them a certainty of exposure, and the district court's objection to a plea agreement without any assessment of that value was arbitrary, and we think the government's petition for relief should be granted for those reasons, Your Honor. Thank you. Mr. Gleeson. Thank you, Chief Judge Sutton. May it please the Court, I'm John Gleeson. I was appointed as amicus in the district court to argue against the plea agreement, and appointed in this court as well. Thank you for doing that. To get to Judge Larson's question, the Doggart case that keeps showing up like a bad penny in Chief Judge Sutton's docket shows exactly the basis on which this rejection of the plea agreement would show up on your direct appeal. It's a perfect example. Five-year charge bargain. It's a charge bargain that produced a five-year cap. Rejected. Defendant goes to trial, gets 19 and a half years. Case comes back up. Comes up here after a final judgment. Gets reversed because of an abuse of discretion on the part of the district judge. Gets sent back. The judge is directed to accept the plea bargain, accept the plea agreement if it finds a particular fact. Finds it, but rejects the plea bargain on another ground. It comes back up. Gets reviewed again. Perfect illustration. Those two cases, as well as Cotaluna. I would say a district court judge hypothetically really did get involved in the plea negotiation process. Just was right in the middle of it and said, I don't care for that. That's okay. At that moment, wouldn't that be mandamusable? Hypothetically, someone who's directly involved, there's just no doubt about it, and the government's like, we can't do this. That would be mandamusable, right? Maybe. You know a case in this court next week before a different panel involving a plea bargain in which there was a C1C, 14-year agreed upon sentence. District judge rejected it, but kept the plea to the lesser included count. Sentenced the defendant to 30 months. So picked and did a line item veto. And that's up before a different panel. I don't want to argue it against somebody else's case. But that's precisely the kind of involvement, picking and choosing. That's exactly what Rule 11 prohibits. Rule 11, you did this in the Abram case, Chief Judge Sutton. It vests very broad discretion. And this is related to my adversary's argument. There's no such thing as being tethered to reasons for which you can reject a charge bargain. There's no such list of reasons. You look at the advisory committee notes, look at Chief Judge Sutton's opinion in the Abram case, there is deliberately broad discretion, explicit declination on the part of the advisory committee to set forth reasons that would justify a rejection. What do you think, I guess another way to put this is what exactly are you defending right now? So in other words, I'm suspicious, or wrong word, I would expect Judge Lawson does not want to fight on the hill of I can always do a line item veto of any agreement that has a appeal waiver. And I am confident he does not want to fight on the hill of I get to participate in the plea negotiations. Correct. And I just find myself wondering, as often happens with mandamus cases, why we can't just get that taken off the table and maybe try again. I can see why the government isn't satisfied with Judge Lawson's opinion. I mean, worried that it's infected by his earlier policies. But it just seems like one of these cases, I mean, this is a pretty hard case to mediate. We've already brought one person outside the process. And so, but it just seems to me there are parts of this that ought to be easy to take care of. And maybe there's some other parts, as Mr. Goetz points out, that are a little trickier. But what's your thought about what exactly you're defending and what we could do from a problem-solving perspective? It's a great question. And he's already been convinced of that. There is no record here of a categorical rule. And if I can, Chief Judge Sutton, Judge Lawson did exactly what this Court should expect him to do. He, on August 5th of 20- He's never approved a plea agreement with an appeal waiver? Well, there's no record that he hasn't. And, Judge, if you read his opinion in this case- What's that? He did say that he hadn't. Didn't he say that he just doesn't? No. What he said, and, Judge Batchelder, if I can, I'm going to explain why, in my view, he did precisely what you should expect him to do. He said in August of 2020 that he had a policy against it. Then the government and Mr. Evelyn jointly requested he accept it. He, lacking an adversarial posture, he appoints counsel, amicus. We tell him, you can't have a categorical rule. You have to exercise sound discretion based on the circumstances of the case. And he said exactly that on page 5 of his opinion. He said exactly that, that it can't be a categorical rule, has to be tailored to the circumstances of the case. Right, but all the reasons that he gave are exactly the same reasons he would give in support of a categorical policy. It's like if I say, I'm applying a negligence standard here, or I'm applying reckless disregard, and I say that's the standard I'm applying, and then I just use negligence principles. Like, okay, I've stated the rule, but I haven't done it right. What is it that he said about this case that's unique to this case? He gave four reasons that I'll suggest to this Court respectfully are very sound. And when you look at them, you can see why he would not reject plea agreements involving appeal waivers. For example, he's obviously concerned about uncorrected errors in the guideline computations. He's got good reason to do it. So does this Court. It's in that Montgomery case that we cite. He's concerned about that. But when you think about the array, and it's not his job. I think Chief Judge Sutton put his finger on this. It's certainly not his job to say, this is what I will accept. That's inappropriate involvement in plea negotiations. But, for example, if you had a charge bargain that set a statutory maximum that's way below the guidelines range, he's going to be less concerned about uncorrected errors in the guideline computation. If there's a C1C plea, like in Doggart, that's way below the guidelines. He might not be as concerned about the absence of an ability to appeal a guideline determination. He's correctly bothered about these. He mentions this kind of one-way concern. This is a sound concern. There is an insulation from appellate review of guidelines errors. He's concerned about the one-way. This is not a reciprocal waiver. And, Chief Judge Sutton, there's no dimension to this case on which you have not written an opinion. You've alluded to the fact that there are enforceable one-way waivers and what that means. This doesn't mean he's going to reject all plea agreements. But what that means is he's expressed a concern that the only corrections of the guidelines that will be made when there's a one-way waiver, like in this case, are corrections that help the government and errors that, in order to the detriment of the Ashley Townsend's of the world, won't get corrected. But Mr. Townsend doesn't think this is a problem, right? And if we've analogized plea bargaining to contract, which the Supreme Court has done over and over and over, I mean, Mr. Townsend's counsel is here saying, this is a great deal for my client. I want my client to have this deal. My client wants this deal. And the judge is telling him he can't have it. Perhaps, let's just focus on the fact, does not want to go to trial. Right. What about that reality? Does not want a public trial over something that perhaps wants to get resolved. How about the person that, I'm not saying this is this case, but admits they did it, wants this behind them, and the last thing they need is a public trial reliving something they admit was wrong. I mean, this is getting in the way of rehabilitation and some very good features, redeeming features. Or someone who doesn't have publicly appointed counsel and has to pay the bill for the representation at trial. Now, if that were, with respect, if that were a basis to find this an abuse of discretion, every single rejection of a plea bargain, because they're always, they're always advanced by defense counsel, by their nature. There's an independent interest on the part of the judiciary. I keep mentioning Abram because it's a perfect example. Chief Judge Sutton's decision. Rule 11 vests in Article 3 judges a separate residuum of discretion to reject a plea bargain, even when by definition both parties want them to accept it. So this notion, my heart goes out to Mr. Evelyn and his counsel, but make it, here's another example of why you should not think that these reasons would always produce a rejection. Judge Lawson said, you know, this is not the way Congress, this is not what Congress had in mind when it enacted those recidivism enhancements to the mandatory minimums. They did not have in mind Mr. Goetz putting them on the table and off the table to pressure someone to plead guilty. He cites that CUPA decision in all, you know, full disclosure, I wrote CUPA, but that decision traces the history of those recidivism enhancements. DOJ went to Congress and said, we want to selectively use them against the worst of the worst drug traffickers. Not to pull them off the table and reconfigure the mandatory minimums to pressure Ashley Townsend to plead guilty. That's not right. So there might be another plea bargain that doesn't involve that arguably, he doesn't have to convince everyone that's problematic, but that's a sound reason. And there might be a plea bargain. Is it in the judicial purview? I mean, what you've described to me might be like a prosecutorial overreach, right? So maybe the Justice Department went to Congress and asked for something that it was going to use selectively, and maybe the Justice Department is not using it selectively. But, wow, I mean, that's an enforcement decision by the Attorney General of the United States. Is that for the judges to police the prosecutorial discretion? I mean, they've decided we're going to charge it in every case. No, they can't police it, but they can look at it. They can comment on it. Justice, you know, just because it might be a constitutional exercise of the executive prerogative doesn't mean that district judges necessarily need to acquiesce in sweeping it under the rug. They can bring it up to this Court's attention. You know, this use of the mandatory minimums, not just in this case, but across a wide spectrum of cases is arguably onerous, an unwise exercise of discretion. You can't police it, but can you comment on it if you want to? You might agree with it. The question here, though, is, is it a sound reason? For your decision. I mean, sure, you can comment on it. Can you make it the basis for your decision? Well, there is no – this goes back to Mr. Goetz's point, which I think is just a false premise. There is no such thing as a list of reasons that are the only reasons that a judge can point to to reject a plea agreement. And with respect, if you read that advisory committee note to Rule 11, you'll see that was deliberate. So – and this Court's case law is crystal clear. You just – it can't be categorical, and there's no – they have not made the case, Judge Lawson, as a categorical rule. This is an appellate court. You cannot find it in this record. So is your line categorical or not categorical? Like, categorical rules are not okay. But individualized rules are okay, no matter what they're based on?  So, like, the defendant's, like, wearing a blue suit, and you're like, meh. No. It's not blue day today. That's where abusive discretion comes in. But this – But you would also say they don't – well, no, maybe that's not right. That's where abusive discretion comes in. Mr. Gleeson, you know these issues so well, so I just want to hear your reaction to this thought about appeal waivers, because I feel like this is the big lurking question, and I get where – I get that Judge Lawson has a strong view about it. I get that others do, and I'm just trying to make sure I understand, because I sometimes think I'm missing this. No, it's – Every one of them has an ineffective assistance carve-out. Sure. But when you have the miscalculation problem, they just botch it with the guidelines, the case law, whatever it is. That is always going to be – I mean, in fact, Mr. Goetz has heard me say this. I'm like, why are you guys pushing this? It's going to be ineffective assistance. Let's solve the problem now. So you have ineffective assistance to deal with the mistaken guideline calculation that prejudices the defendant, which to me deals with that problem. What that leaves is the possibility the law will improve from the defendant's perspective. But, of course, sometimes the law gets worse from the defendant's perspective, which is why it's quite rational to say, yes, I'm just – I'm not going to either get the benefits or the detriments of changes in constitutional law, other laws that are either retroactive or not retroactive. So I don't understand why people think they're so bad. They seem like a fairly legitimate bargaining tool. What am I missing? Judge, on that latter point, the ex post facto clause protects them from any adverse future developments. So that – it's not a reciprocal thing. I understand – you know, I've read your decisions and I've read decisions of the other judges on this panel and of the court. I understand – Your first point is it's kind of uneven, is what you're saying. It's very uneven. Okay. But why isn't it fair to say we're not going to let this sentencing decision or even this conviction be judged by law five years down the road? It's hard to have the system function if we have that approach. No, there's no – look, to answer your question, appeal waivers and collateral attack waivers are ubiquitous. There are many more judges than Judge Kain and David Lawson who have concerns about them because, truth be told, it sounds right, Chief Judge Sutton, to say there's always a 2255 if there's plain error. That sounds right. It doesn't always come out in the wash that way. Judges do worry legitimately about people spending years in prison because of uncorrected guidelines applications. You know, those folks, they're in Florence or they're in the penitentiary in Atlanta. They're not sitting there writing 2255s and getting them traction. So with all respect, that kind of sounds right, but all Judge Lawson said was it's a little problematic. We all know that you can knowingly waive the unknowable, right? We know that. You've got a case involving Booker. Judge Donald had a case involving Johnson. Who saw Johnson coming? There are guys sitting in federal prisons, due in time, based on unconstitutional convictions, and it's okay for district judges to be concerned about that, to find it problematic. Now, if in the end of the day they reject a plea agreement and you think that's an insufficiently weighty concern, fine. And on direct review, and we haven't gotten, I'm over time, I'd like a minute to talk about the mandamus, the procedural part. No, you're being so helpful. I'll tell you when you're not being helpful. Okay, all right. Look, we're lawyers. I think this is a perfectly sound exercise of discretion. But we are lawyers. There's a procedural problem, and there is no case. One last thing you wanted to do, though. Go ahead. You said you had one other area. This is it. Oh, okay, sorry. This is not mandamusable, right? We know that this can be addressed on direct review. Respectfully, Judge, I disagree with you. Judge Lawson can't cut off an appeal by sentencing Ashley Townsend to ten years. If the government says it was an abuse of discretion to deprive them of a bargain that saved them of this really easy lift, I was Chief of Appeals in the U.S. Attorney's Office. The easiest thing to do is to write a red brief on a sentencing appeal. But if the government really feels that strongly about their interest in a bargain that saves them. Did you have appeal waivers? What? Did you have appeal waivers when you were Chief? When I was Chief of Appeals? Back then we weren't nearly as – neither we nor the appellate judges in the Second Circuit were so eager to strip ourselves of the work that comes with the job we were appointed to. So, no, we didn't have them back then. I thought you would take advantage of that. Look, it's reviewable on direct appeal. And secondly, there is just simply no clear and indisputable right to relief. Look, we're talking about it for like half an hour already. It's not the sort of – if there's an error here, and I suggest respectfully there's no error. But if there is, it's certainly not of the clear and indisputable sort that's necessary for mandamus review. All right. Thank you very much, Mr. Gleason. Thank you. And I think you clerked for Chief Judge Martin, didn't you? Yeah, I was sitting in these chairs 40 years ago. Yeah, I thought so. So welcome back, and we're really grateful for your work in this case. Thank you. Thank you. Mr. Goetz. I'm going to start with, I think, one of Judge Larson's questions. A district judge can't say, on the one hand, I don't have a practice against appeal waivers and then reject a plea agreement because it contains an appeal waiver using reasoning that would apply to every agreement that contains those waivers. Those are just two fundamentally inconsistent lines of reasoning. Mr. Gleason couldn't answer the question, Judge Sutton, I think that you raised, which is, has Judge Larson ever accepted a plea agreement with these waivers? The answer is no, to my knowledge. And you'll note that the federal defender filed an amicus brief, and the federal defender didn't argue otherwise either. If anyone would know, it would be the federal defender. So it's not just that he said he had a practice. He has enforced this practice across all of his cases, and he rejected this agreement based on that reasoning. But you're saying that the reasoning that he gave in the fairly lengthy opinion that he issued in rejecting this agreement, that those reasons are not acceptable reasons in your judgment? Correct, Judge Batchelder, because those are broad policy arguments against appeal waivers generally, and they would apply in every case. I mean, they're the reasons for his practice. But do they apply in this case? Well, I mean, the mere fact that they would apply in other cases, the question that comes to my mind is, okay, fine, they might apply in other cases, but the question is, do they apply in this case? I mean, the answer is, I think, no, for two reasons. I mean, one is the discretion to reject a charge bargain is whether or not the charges themselves, the counts of conviction, reflect the defendant's conduct. Those reasons have nothing to do with that. They're the judge's policy reasons against appeal and collateral review waivers. So a judge, in your view, could never reject a plea agreement for the reason that it contained an appeal waiver, no matter how the judge might think this particular appeal waiver was a really bad idea in this particular case? I think the answer is generally yes, but with a caveat that I think should address some of Your Honor's concerns. I mean, we know the answer is yes for B agreements. If this just included recommendation, it doesn't matter what the judge thinks about the appeal waiver. He can't reject the agreement on that basis. So we know there are some types of agreements where the answer is absolutely yes. The caveat would be, even for those agreements, there is, at the enforcement end, protections for a defendant from entering into a bad deal. So this Court's cases have carved out things like above statutory maximum sentences, reliance on race or religion, those types of protected characteristics. So the defendant's protected at the enforcement end. And it's telling that those were the only cases the district judge cited here, courts of appeals cases that the district judge cited here, were cases dealing with enforcement. I see my red light is on. That's not a reason to reject the agreement at the front end. That's a reason why the district judge actually shouldn't reject it at the front end, because the defendant has those protections at the enforcement stage. I'm happy to answer any further questions. No, I think we're good. But thanks to all three of you for your excellent briefs and oral arguments. As always, we appreciate your answering our questions. It's a difficult case, and I guess it goes unstated, but will be stated nonetheless. If you can figure a way to resolve this, we would be pleased. But otherwise, we'll do our best to resolve it ourselves. So thank you very much. The case will be submitted, and the clerk may call the next case.